[No. G036515. Fourth Dist., Div. Three. Nov. 29, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
THAI HUU HOANG, Defendant and Appellant.

COUNSEL

Athena Shudde, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Mary Jo Graves, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Lilia E. Garcia and Janelle Marie Boustany, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

## FYBEL, J.—

### INTRODUCTION

Defendant Thai Huu Hoang was convicted of attempted premeditated murder, based on the natural and probable consequences doctrine. The jury found that by aiding and abetting an assault with a deadly weapon by a gang

member, defendant was also liable for attempted premeditated murder—the natural and probable consequence of the assault. We affirm.

Defendant argues the trial court should not have instructed the jury on the natural and probable consequences doctrine because there was insufficient evidence he aided and abetted the requisite target offense. Given the evidence and the reasonable inferences that could be drawn therefrom, the jury was properly instructed on the natural and probable consequences doctrine.

The question of first impression before us is under what circumstances, if any, the trial court may instruct the jury regarding a target offense not requested by the prosecution, but for which there is substantial evidence. In *People v. Huynh* (2002) 99 Cal.App.4th 662, 678 [121 Cal.Rptr.2d 340], Division Five of the Second Appellate District left open the question "whether the trial court may raise the issue of additional target offenses not requested by the prosecutor." We hold the trial court in this case acted within its discretion when it rejected the prosecution's identification of breach of the peace as a target offense, but stated it intended to allow the target offense of assault with a deadly weapon, and then heard argument thereon. The trial court's actions complied with its duties under *People v. Prettyman* (1996) 14 Cal.4th 248 [58 Cal.Rptr.2d 827, 926 P.2d 1013] (*Prettyman*), and resulted in an increase in the prosecution's burden of proof.

Defendant also argues there was not substantial evidence of his mental state to convict him of attempted premeditated murder as an accomplice. We disagree because the evidence and the reasonable inferences to be drawn from it support the conviction in this regard.

Finally, defendant argues the trial court erred by instructing the jury his flight from the scene after the stabbing could be considered as evidence of his guilt. The circumstances of defendant's departure from the crime scene and his actions thereafter could properly warrant an inference of consciousness of guilt, and the trial court did not err by so instructing the jury.

### STATEMENT OF FACTS AND PROCEDURAL HISTORY

On May 31, 2003, at approximately 8:00 p.m., Hien Tran was with his brother and four friends at a strip mall in Garden Grove. Hien saw Van Anh Tran (Vannie) and Thuy Nguyen. Vannie had been a friend of Hien's, and was defendant's girlfriend. Hien and Vannie got into an argument. Hien's brother said to Vannie, "you such a fucking bitch." Hien admitted he also said "bad things" to Vannie.

Vannie called defendant on her cell phone, and then challenged Hien to stay until defendant arrived. Hien decided to stay and fight defendant one on

one, so he would not look like a coward. Hien's brother and his friends agreed to stay and back him up. Hien believed defendant was a gang member.

About 10 minutes later, two cars entered the parking lot. Defendant, Molary Nou (Ziggy), and another male were in one car; five Asian males were in the other. All the men appeared to be between 17 and 20 years old, and had shaved heads. The two cars emptied, and the men surrounded Hien, his brother, and his friends. Someone in defendant's group asked Hien, his brother, and his friends what gang they were from; someone also announced the members of defendant's group were from the Tiny Rascals Gang (TRG).

Defendant and Ziggy approached Hien; defendant asked Hien, "you want to start shit?" Twenty or 30 seconds later, Hien felt as if he had been punched in the back. He started running, realized he was wet, saw blood, and then discovered he had been stabbed. Hien was scared and continued running away. Defendant and Ziggy followed him. Hien heard one or more people in defendant's group yell, "TRG, dog, don't mess with us." Others in defendant's group threw gang signs and made other references to TRG. Defendant's group quickly drove away in silence.

Hien was treated for stab wounds to the neck, back, left arm, and right hand. He was hospitalized for five or six days. Neither Hien nor his brother nor any of his friends was able to identify the individual who had stabbed him.

While in defendant's presence later that day, Ziggy told Vannie not to tell the police anything. Defendant, Ziggy, and Vannie were arrested later that night at Ziggy's house in Long Beach.

A gang expert opined that, on May 31, 2003, defendant was an active member of TRG. TRG is an Asian gang with 40 to 60 active members in Orange County as of May 31, 2003. The expert testified, in a gang member's view, an act of disrespect toward a gang member's girlfriend would be an act of disrespect toward the gang, requiring retaliation. Many people arriving in multiple cars showed a gang motive for the offense and showed the gang members were acting in association with each other and with the gang.

Testifying in his own defense, defendant denied he was a TRG member, although he knew Ziggy had been a member of TRG. Defendant testified Vannie called him on May 31, 2003, said a guy was picking on her, and told defendant to pick her up. Other than Ziggy, defendant claimed he did not know the people who drove to the parking lot, and did not even know another car was following them. However, defendant knew those other people were gang members after he heard them mention "TRG." Defendant denied

knowing Hien would be stabbed, and stated the stabbing surprised him even though he knew gang members could be violent. Defendant claimed Ziggy threatened him, Vannie, and Vannie's family after the stabbing, yet admitted he went to Ziggy's house that night.

Defendant was charged with attempted premeditated murder (Pen. Code, §§ 664, 187, subd. (a) [count 1]) and criminal street gang terrorism (*id.*, § 186.22, subd. (a) [count 2]). The information alleged the attempted murder was committed for the benefit of, at the direction of, or in association with a criminal street gang. (*Id.*, § 186.22, subd. (b)(1).) A jury convicted defendant of count 1 and count 2, and found the gang enhancement to be true. Defendant was sentenced to 15 years to life in prison on count 1, and to two years on count 2, to run concurrently with the sentence on count 1. In lieu of imposing sentence on the gang enhancement, the court imposed the provisions of Penal Code section 186.22, subdivision (b)(5) that defendant not be paroled until a minimum of 15 years had been served. Defendant timely appealed.

DISCUSSION

I.

NATURAL AND PROBABLE CONSEQUENCES DOCTRINE

A.

*Was there substantial evidence defendant aided and abetted
an assault with a deadly weapon?*

A person who encourages or facilitates the commission of a crime is criminally liable not only for that crime, but also for any other crime that is a natural and probable consequence of the target crime. (*Prettyman, supra*, 14 Cal.4th at p. 260.) There must be a close connection between the target crime a defendant aids and abets and the offense actually committed. (*Id.* at p. 269.) In this case, the jury was instructed it could find defendant guilty of attempted murder if it found beyond a reasonable doubt that (1) defendant aided and abetted the commission of an assault with a deadly weapon, (2) the person who actually committed the assault with a deadly weapon also committed attempted murder, and (3) attempted murder was a natural and probable consequence of assault with a deadly weapon.[1]

---

[1] CALJIC No. 3.02, as given to the jury, states: "One who aids and abets another in the commission of a crime or crimes is not only guilty of that crime, but is also guilty of any other crime committed by a principal which is a natural and probable consequence of the crime

Defendant argues the trial court erred by instructing the jury on the natural and probable consequences doctrine because there was not substantial evidence he intended to aid and abet an assault with a deadly weapon.

We view the evidence and the reasonable inferences the jury could have drawn from the evidence as fulfilling the requirements of *Prettyman*, and thus justifying the trial court's instruction on the natural and probable consequences doctrine. After receiving a phone call from his girlfriend, defendant traveled to the strip mall with his friend, Ziggy, whom he knew to have been a TRG member. Despite defendant's protestations to the contrary, the jury could infer defendant reasonably could have expected the other men congregating in the strip mall parking lot were TRG members. Certainly, this was obvious to defendant no later than when they began openly boasting of their TRG affiliation. The jury could also infer that if a group of gang members responded in such an overwhelming fashion to a perceived slight against defendant's girlfriend, defendant would be aware some of the gang members possessed weapons and would be likely to use them if the occasion arose. The gang members surrounded Hien, and defendant verbally challenged Hien just before someone else stabbed him. After Hien was stabbed, defendant followed after him, before quickly leaving. Defendant did not attempt to determine whether Hien was seriously hurt, did not provide medical assistance, did not call for paramedics, and left before the police arrived. Defendant's actions before, during and after the incident are consistent with someone aiding and abetting an assault with a deadly weapon, as the jury found.

---

originally aided and abetted. [¶] In order to find the defendant guilty of the crime of Attempted Murder, as charged in Count #1, under the theory of 'Natural and Probable Consequences,' you must be satisfied beyond a reasonable doubt that: [¶] 1. The crime of Penal Code Section 245[, subdivision ](a)(1) assault with [a] deadly weapon was committed; [¶] 2. That the defendant aided and abetted in . . . that crime; [¶] 3. That a co-principal in that crime committed the crime of Attempted Murder (Penal Code Section[s] 664[, ]187); and [¶] 4. The crime of Attempted Murder was a natural and probable consequence of the commission of the crime of [Penal Code section] 245[, subdivision ](a)(1) assault with [a] deadly weapon. [¶] In determining whether a consequence is 'natural and probable,' you must apply an objective test, based not on what the defendant actually intended, but on what a person of reasonable and ordinary prudence would have expected [was] likely to occur. The issue is to be decided in light of all of the circumstances surrounding the incident. A 'natural' consequence is one which is within the normal range of outcomes that may be reasonably expected to occur if nothing unusual has intervened. 'Probable' means likely to happen. [¶] You are not required to unanimously agree as to which originally contemplated crime the defendant aided and abetted, so long as you are satisfied beyond a reasonable doubt and unanimously agree that the defendant aided and abetted the commission of an identified and defined target crime (in this case assault with [a] deadly weapon Penal Code Section 245[, subdivision ](a)(1)) and that the crime of Attempted Murder was a natural and probable consequence of the commission of that target crime."

The instruction given by the trial court was proper and correctly set forth the applicable law on the natural and probable consequences doctrine. We find no error.

## B.

*Did the trial court err in the selection of the target offense?*

### 1.

*Background*

The prosecution initially sought to impose aiding and abetting liability on defendant on the theory the attempted murder was a natural and probable consequence of defendant's intended breach of the peace. (Pen. Code, § 415.) Although the trial court determined the prosecution could proceed on a natural and probable consequences theory, the court concluded breach of the peace could not be used as the target offense. During trial, the court advised the prosecution and the defense it intended to instruct the jury that assault with a deadly weapon was the target offense, but would hear argument thereon. As explained in detail *post*, after defendant testified, both sides argued, and the court ruled the target offense identified in the jury instructions would be assault with a deadly weapon.

The trial court made the following statement on the record, out of the presence of the jurors, regarding the natural and probable consequences doctrine: "I'm inclined to modify my position and permit use of natural and probable consequences as it deals with aiding and abetting. [¶] Now, the district attorney is going to like that part. What he's not going to like is the following part: I see a substantial distinction between the circumstances o[f] this case and the circumstances outlined in People versus Montes, so that I will not permit the use of a [Penal Code section] 415 [breach of the peace] as a target offense. I will allow the use of a [Penal Code section] 245 assault with a deadly weapon as a target offense."

Defendant's counsel argued and objected as follows: "I believe that, you know, for the court to allow a change in the target offense at this time is an error in that we have taken this case on and defended this case from the very beginning of the case that the target offense is a [breach of the peace] or a [simple assault]. [¶] Now, I'm not saying that I'm unhappy with the court for going to the [assault with a deadly weapon], because obviously that makes the prosecution's burden a little harder, but I believe that the correct ruling of

this court was what you've said . . . that this is not the type of case that under the analysis that has been given by Prettyman, one, that there is substantial evidence of the target offense, and that the court must find that . . . the actual offense was a natural and probable consequence. It says if this test is not satisfied, the instruction should not be given. [¶] I think the court satisfied itself that this instruction should not be given for what the target offense was, the target offense that indeed the district attorney did put in his jury instructions, that the [breach of the peace] was not there, and that the court's original ruling should be the one that stands and that instruction should not be given."

The prosecution responded to defense counsel's argument: "In regards to [the] target offense, when I presented . . . my proposed jury instructions . . . yesterday to the court and a copy to defense counsel, it is true that the only thing I suggested at that time in writing was a [Penal Code section] 415. However, I think in informal discussions with both counsel and the court, I made it clear that, even prior to the defendant testifying, I felt that a target crime was supported as a conspiracy to commit a [section] 422 [criminal threat resulting in death or great bodily injury], a [section] 240 [assault], a [section] 242 [battery], a [section] 245 [assault with a deadly weapon], and a number of other crimes, that I was forgoing those other options in favor of keeping my case simple, and that's why I had only submitted the [section] 415 as a target offense. [¶] I would note as well that jury instruction 3.02 makes it clear . . . even to the jurors that they are not required to unanimously agree to which originally contemplated crime the defendant aided and abetted as long as [they] are satisfied beyond a reasonable doubt and unanimously agree that the defendant aided and abetted in the commission of an identified and defined target crime. [¶] I don't see the argument by the defense as a reasonable one that I or the People or the court would be estopped from having multiple crimes or target crimes. This is not a case that proceeded from the onset with a premise there would be a limitation of one target crime."

The court then advised the parties, "my final ruling is that I will, over objection, permit the use of natural and probable consequences as it deals with aiding and abetting. However, I will limit the target offense to assault with a deadly weapon under [Penal Code section] 245, and that in conjunction, the district attorney needs to get an instruction defining assault with a deadly weapon."

## 2.

### *Analysis*

On appeal, defendant argues the trial court improperly determined the target offense. For the reasons explained *post*, we disagree.

In *Prettyman, supra*, 14 Cal.4th at page 269, the California Supreme Court imposed upon trial courts the sua sponte duty to instruct jurors on the natural and probable consequences doctrine "when the prosecution has elected to *rely* on the 'natural and probable consequences' theory of accomplice liability and the trial court has determined that the evidence will support instructions on that theory." When the prosecution elects to rely on the natural and probable consequences theory, but fails to identify the target offenses, another duty is imposed on the trial court—the duty to "inquire" about the target offenses on which the prosecution desires instruction. (*Id.* at p. 269, fn. 9.) If, following this inquiry, the prosecution fails to identify any potential target crimes, an instruction on natural and probable consequences may not be given. (*People v. Gonzalez* (2002) 99 Cal.App.4th 475, 485 [121 Cal.Rptr.2d 279].)

Here, the prosecution relied on the natural and probable consequences doctrine, and identified breach of the peace as the target offense. The trial court concluded, however, that attempted murder was not a natural and probable consequence of breach of the peace under the circumstances of this case. The trial court distinguished this case from *People v. Montes* (1999) 74 Cal.App.4th 1050, 1056 [88 Cal.Rptr.2d 482], in which this appellate court concluded murder was a natural and probable consequence of breach of the peace or simple assault because, in the context of rival gang violence, "it was reasonably foreseeable the initial confrontation would quickly escalate to gunfire."

The trial court's sua sponte duty to instruct the jury had not yet arisen here, because, although the prosecution had elected to pursue the case under the natural and probable consequences theory, the court had concluded the evidence would not support the instruction based on the target offense of breach of the peace, as identified by the prosecution. Therefore, the second duty identified by *Prettyman* came into play, and the trial court was required to inquire about the target offense in the instruction.

We conclude the trial court acted within its discretion by stating it would allow an instruction on assault with a deadly weapon instead of breach of the peace, and by hearing argument thereon. Under *Prettyman*, the trial court must *raise* the issue of the appropriate target offense by inquiry. Thus, it

would have been acceptable for the trial court in this case to ask, "Should assault with a deadly weapon be the target crime?" It appears to us that what the court did here—stating it believed the target crime was assault with a deadly weapon and asking for and hearing argument—was the functional equivalent of such an inquiry. To reach a contrary conclusion would be to parse the record too finely. This important issue should not be decided based on the punctuation or voice inflection used, or whether the inquiry was phrased in the form of a question.

Therefore, we conclude the trial court carried out all of its duties as prescribed and permitted by the Supreme Court in *Prettyman*. We find no abuse of the trial court's discretion in the manner by which it did so, particularly in light of the increase in the prosecution's burden of proof by identifying the target offense as assault with a deadly weapon instead of breach of the peace.

## C.

### *Was the trial court's response to the jury's note appropriate?*

Defendant also contends that the trial court's response to the jury's note asking for clarification of the first element of aiding and abetting exacerbated the problem. The court repeated the definition of aiding and abetting in CALJIC No. 3.01, and explained attempted murder is a specific intent crime and assault with a deadly weapon is a general intent crime. Defendant does not argue that explanation was legally incorrect. Indeed, the prosecutor and defense counsel agreed to the text of the response given to the jury. The trial court did not err by providing a correct statement of the law to the jury with the agreement of defendant's counsel.

## II.

### SUBSTANTIAL EVIDENCE

Defendant argues there was insufficient evidence supporting his conviction for attempted premeditated murder. (Defendant does not challenge his conviction for street gang terrorism, or the finding on the gang enhancement.) Specifically, defendant argues there was insufficient evidence he aided and abetted an assault with a deadly weapon.[2]

---

[2] Defendant also argues there was insufficient evidence he shared the specific intent to aid and abet the attempted murder. As the discussion, *post*, will demonstrate, this argument is meritless.

" 'In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.]" (*People v. Steele* (2002) 27 Cal.4th 1230, 1249 [120 Cal.Rptr.2d 432, 47 P.3d 225].) We presume in support of the judgment the existence of every fact that could reasonably be deduced from the evidence. (*People v. Kraft* (2000) 23 Cal.4th 978, 1053 [99 Cal.Rptr.2d 1, 5 P.3d 68].) We may reverse for lack of substantial evidence only if " 'upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' " (*People v. Bolin* (1998) 18 Cal.4th 297, 331 [75 Cal.Rptr.2d 412, 956 P.2d 374].)

■ Defendant's liability in this case was based on his role as an aider and abettor of assault with a deadly weapon, the natural and probable consequence of which was attempted premeditated murder. " 'All persons concerned in the commission of a crime, . . . whether they directly commit the act constituting the offense, or aid and abet in its commission, . . . are principals in any crime so committed.' [Citation.] Accordingly, an aider and abettor 'shares the guilt of the actual perpetrator.' [Citation.] The mental state necessary for conviction as an aider and abettor, however, is different from the mental state necessary for conviction as the actual perpetrator. [¶] The actual perpetrator must have whatever mental state is required for each crime charged . . . . An aider and abettor, on the other hand, must 'act with knowledge of the criminal purpose of the perpetrator *and* with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense.' [Citation.] The jury must find 'the intent to encourage and bring about conduct that is criminal, not the specific intent that is an element of the target offense . . . .' [Citations.] Once the necessary mental state is established, the aider and abettor is guilty not only of the intended, or target, offense, but also of any other crime the direct perpetrator actually commits that is a natural and probable consequence of the target offense. [Citation.]" (*People v. Mendoza* (1998) 18 Cal.4th 1114, 1122–1123 [77 Cal.Rptr.2d 428, 959 P.2d 735].)

Defendant agrees a reasonable trier of fact could have found the stabber committed attempted premeditated murder. Defendant argues he did not aid and abet an assault with a deadly weapon, the crime which resulted in the attempted premeditated murder, because he did not personally take any aggressive action toward Hien.

However, the evidence showed defendant responded to a verbal slight against his girlfriend by bringing two carloads of gang members to confront Hien. (The jury was entitled to disbelieve defendant's testimony that he did

not know the individuals in the other car.) As the standoff intensified, defendant made no move either to defuse the situation or to leave. To the contrary, defendant approached Hien, then followed him after he was stabbed. The evidence was sufficient to show defendant had knowledge of the criminal purpose of the individual who actually stabbed Hien, and acted with the intent or purpose to commit assault with a deadly weapon or to encourage or facilitate that crime. (*People v. Mendoza, supra,* 18 Cal.4th at pp. 1122–1123; *Prettyman, supra,* 14 Cal.4th at p. 259.) Once the jury found the necessary mental state was established, the jury could find defendant guilty of aiding and abetting not only assault with a deadly weapon, but also attempted premeditated murder which the jury found was a natural and probable consequence of the assault with a deadly weapon. (See *Prettyman, supra,* 14 Cal.4th at p. 263, and cases cited therein.) Viewing the evidence in the light most favorable to respondent, we conclude there was substantial evidence to support defendant's conviction for aiding and abetting attempted premeditated murder.

## III.

### FLIGHT INSTRUCTION

Defendant argues the trial court erred by instructing the jury that flight after the commission of the crime could be considered in determining defendant's guilt. CALJIC No. 2.52, as given to the jury, reads: "The flight of a person immediately after the commission of a crime, or after he is accused of a crime, is not sufficient in itself to establish his guilt, but is a fact which, if proved, may be considered by you in the light of all other proved facts in deciding whether a defendant is guilty or not guilty. The weight to which this circumstance is entitled is a matter for you to decide."

█ In general, an instruction that flight may be considered along with other proven facts in determining guilt " 'is proper where the evidence shows that the defendant departed the crime scene under circumstances suggesting that his movement was motivated by a consciousness of guilt.' [Citation.]" (*People v. Roybal* (1998) 19 Cal.4th 481, 517 [79 Cal.Rptr.2d 487, 966 P.2d 521].) Defendant left the scene of the crime immediately after Hien's stabbing, quickly and in silence. This conduct suffices to meet the requirement of a purpose to avoid being observed or arrested. (*People v. Smithey* (1999) 20 Cal.4th 936, 982 [86 Cal.Rptr.2d 243, 978 P.2d 1171].) These circumstances warrant an inference of consciousness of guilt on defendant's part. (*Ibid.*) While defendant emphasizes he returned to "familiar environs," lessening the inference of consciousness of guilt (*ibid.*), defendant did not return to his home other than to change his clothes, and then went to the

house of his friend Ziggy, whom he knew to be a gang member. Under these circumstances, there was no error in instructing the jury with CALJIC No. 2.52.

DISPOSITION

The judgment is affirmed.

Rylaarsdam, Acting P. J., and Aronson, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 21, 2007, S148875.