Filed 8/31/20  P. v. Ramos CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>MARTIN RAMOS,<br><br>Defendant and Appellant. | B298891<br><br>(Los Angeles County Super. Ct. No. PA088513) |

APPEAL from judgments of the Superior Court of Los Angeles County, Michael Terrell, Judge.  Affirmed; remanded with directions.

Randall Conner, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., and Stephanie A. Miyoshi, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Martin Ramos appeals from judgments of conviction for aiding and abetting in shooting at an occupied motor vehicle and assaulting the occupants of that vehicle. He contends (1) insufficient evidence supported the aiding and abetting finding, the sentence imposed multiple punishment for one criminal act, and (2) the court erred in calculating his custody credit. Respondent concedes the second and third points. We conclude sufficient evidence supported Ramos's conviction on an aiding and abetting theory, and affirm the conviction but remand for resentencing.

## BACKGROUND

On March 19, 2017, police detained Ramos, a member of the Brown Familia street gang, and Joshua Lopez, a member of the Lennox 13 street gang, and retrieved a replica semi-automatic handgun from Lopez. Both men wore hats bearing the letter "B."

On March 26, Christian Herrera, driving a pickup truck, picked up his cousin, Jose Herrera, at his house. Ramos, Lopez, and two women stood on the sidewalk near the house, with Lopez walking slowly back and forth across the street. As Christian and Jose started to drive away, Lopez and Ramos stared provocatively at Christian and Jose, and Lopez slowly crossed the street in front of them, right to left, forcing Christian to stop the truck. As he crossed, Lopez "threw up a gang sign" and gave Christian another hard stare. After the truck passed, Ramos and the women crossed to Lopez. From that side of the street, with Ramos approximately five feet behind Lopez, both stared provocatively at Christian and made gang gestures.

2

Seeing them in his driver's side mirror, Christian stopped the truck, opened the door, and leaned out the door with his left shoulder and left foot, and asked in a loud voice, " 'Like what's the problem? What are you guys staring at?' "

Lopez then drew a shotgun from his pants and fired twice at Christian and the truck, striking Christian's shoulder with several birdshot pellets and spiderwebbing the truck's rear window. Ramos and the two women stood there as if "nothing had happened." Christian got back in the truck and drove away.

Both Christian and Jose identified Ramos to police.

At trial, Christian testified that when Lopez walked across the street in front of the truck, he had a kind of "skipping" gait, "like leaning on the side kind of-ish, like side to side, but slowly." He demonstrated the walk by "dropping one elbow and walking slowly on the ramp up to the witness stand."

Gang experts testified that certain Lennox 13 gang members lived in the area claimed by the Brown Familia gang, that it was not uncommon for gang members to associate with members from other gangs, and that by "clicking up together and committing these crimes," the gangs showed "how friendly they are to each other and how willing they are to work together to reach a common goal."

Ramos was convicted by a jury as an aider and abettor of Lopez of shooting at an occupied motor vehicle (Pen. Code, § 246; count 3), possession of a firearm by a felon (Pen. Code, § 29800, subd. (a)(1); count 4), and two counts of assault with a firearm (Pen. Code, § 245, subd. (a)(2); counts 11 [as to Christian] and 12 [as to Jose]). The jury found true that a principal was armed with a firearm (Pen. Code, § 12022, subd. (a)(1)), but found not true that a principal personally and intentionally discharged a

firearm or that the offenses were committed for the benefit of a criminal street gang.

The court sentenced Ramos to state prison for eight years, comprising five years for shooting at an occupied vehicle, eight months for weapon possession, one year four months for count 11 (assault on Christian), and one year for count 12 (assault on Jose).

## DISCUSSION

### A.     Sufficient Evidence Supported Ramos's Conviction

Ramos contends insufficient evidence supported the finding that he aided and abetted Lopez. We disagree.

A person who aids and abets the commission of a crime is a principal in the crime and shares the guilt of the actual perpetrator. (Pen. Code, § 31.) A person aids and abets the commission of a crime when he, with knowledge of the unlawful purpose of the perpetrator, and with the intent or purpose of committing, facilitating, or encouraging commission of the crime, by act or advice aids, promotes, encourages or instigates the commission of the crime. (*People v. Prettyman* (1996) 14 Cal.4th 248, 259.) Because there is rarely direct evidence of intent, specific intent must usually be shown from the circumstances of the crime. (*People v. Lashley* (1991) 1 Cal.App.4th 938, 945-946.)

In reviewing a claim of insufficient evidence, we evaluate whether the record, viewed in the light most favorable to the judgment, discloses evidence of reasonable, credible, and solid value from which a rational fact finder could find the defendant guilty beyond a reasonable doubt. (*People v. Snow* (2003) 30 Cal.4th 43, 66.) We presume the existence of every fact in support of the judgment that the trier of fact could reasonably

4

deduce from the evidence. (*People v. Thompson* (2010) 49 Cal.4th 79, 113.)

Here, the evidence showed that Ramos and Lopez were together at the shooting, both staring provocatively and making gang gestures, and when Lopez shot Christian, Ramos stood by as if nothing had happened. And gang evidence showed it was not uncommon for gang members to commit crimes together in a show of solidarity and mutual support. From this evidence the jury could reasonably conclude that Ramos intentionally facilitated or encouraged Lopez's shooting at Christian. Their concerted action reasonably implied a common purpose. Lopez revealed the purpose when he drew a weapon. There was no evidence Ramos was surprised by Lopez's conduct, and no evidence he was afraid to interfere with it. This demeanor supported the inference that he was unsurprised by Lopez's conduct, and thus the further inference that he supported Lopez's intentions. (See, e.g., *People v. Hoang* (2006) 145 Cal.App.4th 264, 270 [a person's making no attempt to determine whether a victim was injured or call for help supported the inference that the person aided and abetted an assault]; *People v. Campbell* (1994) 25 Cal.App.4th 402, 409 [evidence that defendant was unsurprised by another's conduct supported the inference that the defendant acted to assist the conduct].) It is of no moment that Ramos may not have had *advance* knowledge that Lopez would shoot Christian, because " '[a]iding and abetting may be committed "on the spur of the moment," that is, as instantaneously as the criminal act itself.' " (*People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1148.)

In our view, the evidence reasonably indicates that Ramos intended by his positioning and conduct to offer support and

encouragement to Lopez, and thus played an affirmative supportive role in the shooting.

Ramos argues no evidence suggested that he knew Lopez was armed. We disagree. The evidence showed that Ramos and Lopez were together on the day of the shooting, with Lopez walking slowly back and forth across the street. Christian testified that when Lopez crossed the street in front of his truck, he walked with an odd gait. When an individual conceals a rifle on his person and walks in an unusual gait while walking with others, it is reasonable to infer that the others know about the rifle. This is especially so if they exhibit no surprise when the rifle is drawn and fired.

Ramos argues no evidence indicated he knew Lopez would shoot at Christian's truck. He argues that Christian was driving away, and Ramos had no way to know he would stop, so as to give Lopez a chance to shoot at it. Again, we disagree. When an individual deliberately provokes another, it is reasonable to infer that the object of the provocation will respond. It is further reasonable to infer that matters will escalate. A gang member's hard stare and gang gestures are deliberately provocative acts, which a gang member should anticipate will draw a response, even if the object of the gestures is driving away. It is therefore reasonable to infer that Ramos anticipated Christian would stop or turn the truck around, and could further anticipate that the resulting confrontation would escalate. Given that his companion was armed, Ramos could reasonably anticipate, and thus intend, that gunfire would ensue.

Ramos argues no evidence established that he provided any actual aid to Lopez, because he was standing behind Lopez at the time of the shooting, and Lopez could not have known he too was

6

provoking Christian. We disagree. We preliminarily note that when Christian shouted at Lopez and Ramos, he said, "What are you guys staring at," which would have indicated to Lopez that Ramos was actively assisting him. In any event, the evidence established that Ramos stared and gestured at Christian before Lopez crossed in front of his truck, and then followed Lopez across the street and stood near him after the truck had passed. These actions reasonably implied a unity of purpose and action which continued, and which Lopez relied upon, even when Ramos was momentarily out behind him and out of sight.

**B.    The Sentence on Count 12 Must be Stayed**

Ramos argues the sentence for either count 11 or 12, assault on Christian and Jose, respectively, must be stayed pursuant to Penal Code section 654 because both counts occurred during the same course of conduct as Ramos's shooting at an occupied motor vehicle, count 3.

Ramos argues the one-year-four-month sentence imposed on count 11 (for shooting at Christian), not the one-year sentence on count 12 (shooting at Jose), should be stayed because count 11 involved the same victim, Christian, as count 3, in which the prosecution alleged Lopez shot at Christian's truck.

Respondent concedes that Penal Code section 654 applies to count 11 or count 12, but argues the shorter, one-year sentence on count 12 (Jose) should be stayed because the underlying crime, shooting at an occupied vehicle, involved only Jose, not Christian, because Jose was inside and Christian outside the truck when Lopez fired at it. We agree with Respondent.

Subdivision (a) of Penal Code section 654 provides that an act punishable in different ways by different provisions of law may be punished under only one provision. Contrary to Ramos's

7

argument, count 3 did not allege Lopez shot at *Christian's* truck, making him the victim, it alleged Lopez shot at an *occupied* truck, making the occupant the victim. That occupant was most clearly Jose (but see *post*). Lopez's shooting at a vehicle occupied only by Jose must be punished either as shooting at an occupied vehicle or as an assault on Jose, but not both. Therefore, the sentence on count 12 (Jose) must be stayed.

We recognize that the evidence was equivocal as to whether Christian had fully exited the truck before Lopez fired at it, as some testimony indicated that after he opened the door he stepped out with only his left foot, and pivoted toward Jose before the shot, thereby remaining partially inside. But as between Jose and Christian, clearly Jose occupied the truck at the time of the shooting.

## C. Ramos is Entitled to Additional Conduct Credit

Ramos was in custody for 794 days and received this amount of custody credit. He received an additional 119 days of conduct credit, or 15 percent, pursuant to Penal Code section 2933.1, subdivision (c). Ramos contends he was entitled to a full 794 days of conduct credit pursuant to Penal Code section 4019, because the 15 percent limitation under section 2933.1 applies only when a defendant has been convicted of a violent felony, and none of his convictions is defined in Penal code section 667.5 as a violent felony. Respondent concedes the point, and we agree.

A defendant may accrue conduct credits under Penal Code section 4019 for the period of incarceration prior to sentencing, at a ratio of two days of conduct credit for every two days of actual credit. (See *People v. Arevalo* (2018) 20 Cal.App.5th 821, 827; Pen. Code, § 4019.) But a defendant convicted of a violent felony, as defined in Penal Code section 667.5, can earn only up to 15

8

percent of the actual time in confinement as conduct credit. (Pen. Code, § 2933.1, subd. (c); *Arevalo*, at p. 827.)

Here, none of Ramos's convictions is listed in Penal Code section 667.5 as a violent felony. Therefore, he was entitled to 794 days of conduct credit.

## DISPOSITION

The judgment is affirmed. The trial court is directed to amend the abstract of judgment to reflect that the sentence for count 12 is stayed, and that Ramos is to receive 794 days of conduct credit, and to forward the amended abstract of judgment to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED

CHANEY, J.

We concur:

ROTHSCHILD, P. J.

BENDIX, J.

9