Filed 10/17/23  P. v. Harris CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Tehama)

----

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>    v.<br><br>DAVID WAYNE HARRIS,<br><br>      Defendant and Appellant. | C097002<br><br>(Super. Ct. No. NCR82211) |

Defendant David Wayne Harris pleaded no contest to attempted murder and felony street terrorism.  The trial court sentenced him to a stipulated term of 22 years eight months in state prison.  Defendant later filed a petition for resentencing under Penal Code former section 1170.95 (now section 1172.6).[1]  The trial court denied the petition, finding that defendant did not establish a prima facie claim for relief.

Defendant now contends that because nothing in the record of conviction conclusively precludes him from relief as a matter of law, the trial court should have

---

[1] Undesignated statutory references are to the Penal Code.  The Legislature amended former section 1170.95 effective January 1, 2022, under Senate Bill No. 775 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 551).  Effective June 30, 2022, the Legislature renumbered former section 1170.95 to section 1172.6 without substantive change.  (Stats. 2022, ch. 58, § 10.)  This opinion will refer to section 1172.6.

1

issued an order to show cause and held an evidentiary hearing on the petition. To the extent the trial court relied on the preliminary hearing transcript to find him ineligible for resentencing, defendant argues the trial court engaged in improper weighing of evidence and fact finding at the prima facie stage.

We will reverse and remand for the trial court to issue an order to show cause and to conduct further proceedings to determine whether resentencing is warranted.

BACKGROUND

In July 2011, law enforcement responded to a stabbing at a McDonald's restaurant in Tehama County. The People charged defendant with attempted murder with malice aforethought (§§ 664, 187, subd. (a) -- count 1), assault with a deadly weapon (§ 245, subd. (a)(1) -- count 2), and street terrorism (§ 186.22, subd. (a) -- count 5). The attempted murder charge included enhancement allegations for street terrorism (§ 186.22, subd. (b)(5)), great bodily injury (§ 12022.7, subd. (a)), and personal use of a deadly weapon, a knife (§ 12022, subd. (b)(1)). The assault charge included enhancement allegations for great bodily injury (§ 12022.7, subd. (a)) and gang benefit (§ 186.22, subd. (b)(1)(B)). Charges were also asserted against codefendants.

At the preliminary hearing, several police officers testified about statements made by various witnesses. The victim, A.D., reported that four males jumped him and stabbed him twice. One witness said she was with A.D. when several males approached them and started fighting. Another witness told officers he saw several males fighting and yelled at them to stop. Yet another witness told officers he noticed four males emerge from underneath a bridge and approach the victim; they began to fight and one of the men punched the victim with a stabbing motion.

Codefendant Jessica Watkins gave several statements to police officers. She admitted being with C.P. and four young men -- defendant (a purported Norteño gang member), J.C., R.D., and D.B. (known by the gang moniker "Droopy") -- when the

2

stabbing occurred.[2]  According to Watkins, defendant, J.C., R.D., and Droopy were involved in the altercation with the victim, although she did not identify whether all four actually attacked the victim.  The group was in a car when defendant saw the victim and said, "We're going to stick this fool, we're going to stab him."  At some point, she heard J.C. say he had a knife.  Watkins parked in the McDonald's parking lot, and the four men got out and walked towards a bridge or slough area when she heard defendant ask if anyone had a knife.  She later saw defendant attack the victim.  The four men ran back to the car and the group left; Watkins heard defendant telling the others to get rid of the knife and she saw Droopy throw what Watkins believed to be a knife and pieces of a gun out the car window.

Watkins's sister told police officers that on the day of the stabbing Watkins told her "one of our homies just stabbed a scrap."  Watkins's sister claimed that she, Watkins, and defendant were all Norteño gang members, and she thought defendant might have stabbed someone to try to earn a gang tattoo.

C.P. reported she was with the group at the McDonald's when the four men got out of the car and chased the victim; defendant and Droopy were in the lead, and J.C. and R.D. followed behind them.  The victim either fell or was pushed to the ground, and C.P. did not see anything after the victim was on the ground.  When the four men returned to the car, C.P. heard defendant say something that she understood to mean defendant had stabbed the victim.  C.P. saw Droopy throw a knife and gun out the car window, which she said defendant had given to him.  She also said defendant admitted to her that he stabbed the victim.

Codefendant R.D. claimed he was in a car with defendant and the others when he heard defendant say, "I know that fool," after seeing the victim walking down the street.

---

[2]  Because some of those involved were or may have been minors at the time of the incident, we refer to them by their initials.  (See Cal. Rules of Court., rule 8.90(b)(9).)

3

Defendant asked him if he had a knife. According to R.D., he and the three other men got out of the car and hid behind bushes to wait for the victim. As the victim passed, they charged him from their hiding spot; defendant and Droopy were in front and he and J.C. were in the back. R.D. thought he saw the victim pull out a gun so he and J.C. slowed down while defendant and Droopy chased the victim around a pickup truck; R.D. could not see what happened behind the truck, but he later saw the victim holding his stomach and bleeding. Defendant told R.D. he had stabbed the victim because he believed the victim was a Sureño gang member.

Codefendant J.C. identified defendant as the person who stabbed the victim. He said Droopy was also involved in the stabbing. After attacking the victim, the group got back in their car and J.C. saw defendant with a bloody knife; defendant gave the knife to Droopy to throw away. Defendant admitted to J.C. that he had stabbed the victim, and J.C. believed the stabbing was gang related because both defendant and Droopy were Norteño gang members.

Following his arrest, defendant told police he stabbed the victim two or three times and then gave the knife to Droopy to throw over a bridge. Various Norteño gang indicia were found on or in defendant's possession when he was arrested. During the preliminary hearing, a gang expert opined that the stabbing was for the benefit of a criminal street gang.

In February 2012, defendant pleaded no contest to count 5 (street terrorism) and a modified count 1 (attempted murder) in exchange for a stipulated term of 22 years eight months in prison and dismissal of the remaining charges and allegations. As to count 1, defendant specifically admitted that he committed the offense for the benefit of, at the direction of, and in association with a criminal street gang with the specific intent to promote, further, and assist in criminal conduct by gang members. He further admitted that he personally caused great bodily injury. The trial court granted the parties' request to strike "with malice aforethought" from the count 1 attempted murder charge

4

and changed the associated gang enhancement allegation from section 186.22, subdivision (b)(5) to section 186.22, subdivision (b)(1)(C).  The parties stipulated to the preliminary hearing transcript as the factual basis for defendant's plea, but defendant did not admit any particular facts from the preliminary hearing.  The trial court subsequently imposed the stipulated prison term.

In April 2022, defendant filed a section 1172.6 petition for resentencing. Defendant's form petition alleged, among other things, that (1) a complaint or information was filed against him that allowed the prosecution to proceed under a theory of attempted murder under the natural and probable consequences doctrine; (2) that he was convicted of attempted murder after accepting a plea in lieu of a trial at which he could have been convicted of attempted murder; and (3) that he could no longer be convicted of attempted murder because of changes made to sections 188 and 189, effective January 1, 2019.  Defendant requested the appointment of counsel.

The trial court considered defendant's petition at a hearing in September 2022. When the trial court asked whether defense counsel could cite anything in the record of conviction indicating that the natural and probable consequences doctrine had applied, counsel responded that he did not see any such indication.  The trial court denied the petition after finding that defendant had not made the requisite prima facie showing.

## DISCUSSION

Defendant argues the trial court erred in denying his petition at the prima facie stage because nothing in the record of conviction conclusively shows he is ineligible for relief under section 1172.6.  In defendant's view, his plea to attempted murder without malice and his admission of the great bodily injury enhancement are consistent with an attempted murder conviction based on the natural and probable consequences doctrine -- a theory that is no longer valid.  To the extent the trial court relied on the preliminary hearing transcript to deny the petition, defendant asserts the trial court erred because he

5

did not admit the truth of any facts asserted at the preliminary hearing when he entered his plea.

The People counter that defendant is ineligible for relief as a matter of law because the preliminary hearing transcript establishes that defendant was sentenced for attempted murder as the actual attempted killer.

A

Effective January 1, 2019, Senate Bill No. 1437 (2017-2018 Reg. Sess.) amended the felony-murder rule and the natural and probable consequences doctrine "to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).)

Senate Bill No. 1437 also added what is now section 1172.6 (Stats. 2018, ch. 1015, § 4; Stats. 2022, ch. 58, § 10). Effective January 1, 2022, Senate Bill No. 775 amended section 1172.6 to expand those eligible for relief to, among others, persons convicted of attempted murder based on the natural and probable consequences doctrine. (Stats. 2021, ch. 551, § 1, subd. (a).) Section 1172.6, subdivision (a) now provides that a person convicted of attempted murder under the natural and probable consequences doctrine may file a petition for resentencing and be resentenced if all of the following conditions apply: (1) a complaint or information was filed against the petitioner that allowed the prosecution to proceed under a theory of attempted murder under the natural and probable consequences doctrine; (2) the petitioner was convicted of attempted murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of attempted murder; and (3) the petitioner could not presently be convicted of attempted murder because of changes to Sections 188 and 189 made effective January 1, 2019.

If the petition presents a prima facie showing of entitlement to relief, the trial court must issue an order to show cause. (§ 1172.6, subd. (c).) The trial court must

6

then hold a hearing to determine whether petitioner is entitled to resentencing. (§ 1172.6, subd. (d)(1).)

The prima facie inquiry under section 1172.6, subdivision (c) is limited, and the bar for establishing a prima facie claim for relief is very low. (*People v. Lewis* (2021) 11 Cal.5th 952, 971.) The trial court " ' "takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved." ' " (*Ibid.*) Although the trial court may rely on the record of conviction in determining whether defendant has made a prima facie showing, it "should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Id.* at p. 972.)

We independently review a trial court's determination as to whether a petitioner has made a prima facie showing. (*People v. Harden* (2022) 81 Cal.App.5th 45, 52.)

B

The information initially charged defendant with three substantive offenses: attempted murder with malice aforethought, assault with a deadly weapon, and street terrorism. (*People v. Reed* (1996) 13 Cal.4th 217, 224 [the record of conviction includes the charging document].) The attempted murder charge did not limit the prosecutor from convicting defendant on any available theory of attempted murder liability, which at the time of defendant's no contest plea in February 2012 could have included liability under the natural and probable consequences doctrine. (See e.g., *People v. Eynon* (2021) 68 Cal.App.5th 967, 977-978.)

Defendant pleaded no contest to attempted murder. But he did so only after the trial court granted the parties' request to strike "with malice aforethought" from the information. And pleading no contest to the generic crime of attempted murder is not the same as admitting a specific theory of attempted murder.

"Attempted murder requires the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing." (*People v. Lee*

7

(2003) 31 Cal.4th 613, 623; see *People v. Smith* (2005) 37 Cal.4th 733, 739.) For purposes of the offense, "[i]ntent to unlawfully kill and express malice are, in essence, 'one and the same.' " (*Smith,* at p. 739.) To be guilty of attempted murder, then, a defendant must harbor express malice toward the particular victim (*ibid.*), unless that malice is imputed to the defendant under some other theory such as the natural and probable consequences doctrine.

Under the natural and probable consequences doctrine, an aider and abettor may be culpable for a nontarget, or unintended, offense committed while committing a target offense. (*People v. Favor* (2012) 54 Cal.4th 868, 874.) "By its very nature, aider and abettor culpability under the natural and probable consequences doctrine is not premised upon the intention of the aider and abettor to commit the nontarget offense because the nontarget offense was not intended at all. It imposes vicarious liability for any offense committed by the direct perpetrator that is a natural and probable consequence of the target crime." (*People v. Canizalez* (2011) 197 Cal.App.4th 832, 852.) Attempted murder can be a natural and probable consequence of a charged assault. (See e.g., *People v. Hoang* (2006) 145 Cal.App.4th 264, 271-274.)

Here, by explicitly deleting the phrase "with malice aforethought" from the attempted murder charge in order to facilitate defendant's plea to the revised count (i.e., without the malice language), we conclude it is at least possible that defendant may not have admitted that he personally harbored express malice, or the required intent to kill, but rather that one of his codefendants who also attacked the victim harbored express malice, which was imputed to him under the natural and probable consequences doctrine.

Defendant has thus offered a theory under which the evidence presented during the preliminary hearing was consistent with his guilt of attempted murder under the natural and probable consequences doctrine, based upon an intent to participate in the charged target offense of assault with a deadly weapon. (§ 188, subd. (a)(3) [prohibiting imputing malice based solely on participation in a crime].) In doing so, he created a factual dispute

8

that cannot be resolved at the prima facie stage since nothing in the record definitively forecloses his theory. (*Lewis, supra*, 11 Cal.5th at pp. 971-972.)

The fact that attempted murder requires an intent to kill, and that defendant pleaded to the offense, does not alone answer whether defendant personally intended to kill the victim, or whether that intent was transferred to him under the natural and probable consequences doctrine. (*People v. Montes* (2021) 71 Cal.App.5th 1001, 1007-1008 [trial court erred in inferring from the jury's finding of guilt of attempted murder that the jury must have found the defendant personally possessed the intent to kill where the conviction under a natural and probable consequences theory was possible].) Nor does defendant's admission to the great bodily injury enhancement foreclose the possibility that he pleaded to attempted murder based on a natural and probable consequences theory without personally harboring malice. The enhancement itself does not include an intent to kill component (§ 12022.7), and it does not establish as a matter of law that he intended to kill the victim or that he was the sole person who stabbed the victim.

Indeed, this is not a case in which the only possible scenario is that defendant was the sole perpetrator. (Cf. *People v. Delgadillo* (2022) 14 Cal.5th 216, 233 [the defendant was "not entitled to any relief under section 1172.6" because he "was the actual killer and the only participant in the killing"].) Here, defendant and at least three others were involved in the melee that led to the stabbing and attempted murder charge. Testimony at the preliminary hearing indicates that more than one codefendant may have had a knife and that the victim may have been stabbed by more than one person.[3]

---

[3] Courts are divided on the extent to which a trial court may rely on the preliminary hearing transcript to deny a resentencing petition at the prima facie stage (compare *People v. Flores* (2022) 76 Cal.App.5th 974, 988-992 [preliminary hearing transcript cannot establish ineligibility as a matter of law even if a defendant stipulated to the

Although there was some preliminary hearing testimony that defendant confessed to stabbing the victim, an affirmative finding that he did so would require factfinding that is not permitted at the prima facie stage. (See *People v. Duchine* (2021) 60 Cal.App.5th 798, 815 [the time for weighing and balancing and making findings on the ultimate issues arises at the evidentiary hearing stage rather than the prima face stage; the record should be consulted at the prima facie stage only to determine readily ascertainable facts]; *People v. Drayton* (2020) 47 Cal.App.5th 965, 981-983 [in making an assessment of the petitioner's prima facie showing, the trial court should not have evaluated and weighed the evidence based on testimony at the preliminary hearing but instead should have accepted petitioner's asserted facts as true], abrogated on other grounds in *Lewis, supra*, 11 Cal.5th at pp. 963-964].)

In some cases the record may reveal that a defendant admitted more than the elements of the offense charged, and such additional admissions may preclude relief. But a defendant is not ineligible for relief where he made no admissions related to the attempted murder other than pleading no contest to the count as charged. (*People v. Rivera, supra*, 62 Cal.App.5th at p. 234.) Here, during the change of plea hearing, defendant did not admit any particular facts presented at the preliminary hearing; he did not admit confessing that he had stabbed the victim. (*People v. French* (2008) 43 Cal.4th 36, 50-51 [a defendant is not required to personally admit the truth of the factual basis of the plea, and the defendant's stipulation to the factual basis for the plea does not constitute a binding admission for all purposes].) Simply being held to answer on a

transcript as the factual basis for plea] and *People v. Rivera* (2021) 62 Cal.App.5th 217, 235 [same for grand jury transcript] with *People v. Nguyen* (2020) 53 Cal.App.5th 1154, 1166-1168 [preliminary hearing transcript is part of record of conviction that may be considered in determining whether a petitioner has satisfied his prima facie burden]). The California Supreme Court recently granted review in *People v. Patton* (2023) 89 Cal.App.5th 649, review granted June 28, 2023, S279670, which considers whether the trial court engaged in impermissible judicial factfinding by relying on the preliminary hearing transcript to deny the defendant's section 1172.6 petition at the prima facie stage.

charge or allegation does not constitute a factual finding that the charge or allegation is true, nor does it constitute a determination that the charge or allegation is supported by substantial evidence. (*People v. Eynon* (2021) 68 Cal.App.5th 967, 975-976.) Indeed, at an evidentiary hearing under section 1172.6, subdivision (d)(3), defendant will have an opportunity to present evidence to the contrary.

Because defendant's petition alleged the facts necessary for relief under section 1172.6, and nothing in the record conclusively demonstrates that he is ineligible for relief as a matter of law, defendant's petition made a prima facie showing of entitlement to relief under section 1172.6. (§ 1172.6, subd. (c).) We will reverse and remand for further proceedings under the statute, but we express no opinion on whether defendant is entitled to resentencing.

DISPOSITION

The order denying defendant's section 1172.6 petition is reversed, and the matter is remanded with directions to issue an order to show cause and conduct further proceedings in accordance with section 1172.6, subdivision (d).


/S/

MAURO, J.

We concur:


/S/

EARL, P. J.


/S/

KRAUSE, J.

11