Filed 9/21/23  P. v. Arteaga CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C097214 |
| Plaintiff and Respondent, | (Super. Ct. Nos. MAN-CR-FE-2007-0003772, MF030771B) |
| v. | |
| PETER MANUEL ARTEAGA, | |
| Defendant and Appellant. | |

A jury found defendant Peter Manuel Arteaga guilty of attempted murder, robbery, and burglary, but it found not true a great bodily injury enhancement attached to the attempted murder charge.  He received a life sentence with the possibility of parole plus 17 years.  This court affirmed his convictions on appeal in *People v. Arteaga* (June 10, 2010, C060504) (nonpub. opn.) (*Arteaga*), but we vacated his sentence and remanded for the trial court to consider exercising its discretion to dismiss defendant's prior strike.  The trial court declined to dismiss defendant's strike prior and reinstated the original sentence.

1

Defendant later filed a petition for resentencing under former Penal Code section 1170.95 (now § 1172.6).[1]  The trial court denied the petition without an evidentiary hearing, finding that defendant did not establish a prima facie claim for relief.

On appeal, defendant contends the trial court should have issued an order to show cause and held an evidentiary hearing.  He argues that although no natural and probable consequences doctrine instructions were given, the jury was instructed on aider and abettor liability, and it could have found him guilty of attempted murder because he aided and abetted a codefendant in the underlying crimes.  In his view, nothing in the record of conviction conclusively shows that the jury did not impute an intent to kill to him under some other theory even if it was not expressly instructed on the natural and probable consequences doctrine.  Finding no merit to his contentions, we shall affirm the order.

## BACKGROUND

In 2007, defendant and codefendant Jimmy Rodriguez[2] were charged with willful, deliberate, and premeditated attempted murder (§§ 664, 187, subd. (a); count 1), two counts of first degree home-invasion robbery (§ 211; counts 2 & 3), and first degree burglary (§ 459; count 4).  For counts 1 and 3, it was alleged that both defendant and Rodriguez personally inflicted great bodily injury (§ 12022.7, subd. (a)) and great bodily injury causing the victim to become comatose due to a brain injury or to suffer paralysis (§ 12022.7, subd. (b)).  For defendant, it was further alleged that he had a prior serious felony conviction (§ 667, subd. (a)(1)) and a prior strike conviction (§§ 667, subd. (a), 1170.12, subd. (b)) based on a May 1998 attempted first degree burglary conviction.

---

[1]     Undesignated statutory references are to the Penal Code.  The Legislature amended section 1170.95 effective January 1, 2022, under Senate Bill No. 775 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 551) (Senate Bill 775).  Effective June 30, 2022, the Legislature renumbered section 1170.95 to section 1172.6 without substantive change. (Stats. 2022, ch. 58, § 10.)  This opinion will refer to section 1172.6.

[2]     Rodriguez is not a party to this appeal.

2

Defendant and Rodriguez were tried together. A jury found defendant guilty of each of the offenses but found the great bodily injury enhancements not true. The jury was unable to reach a verdict as to Rodriguez on the attempted murder charge, and except for the great bodily injury allegation, the jury otherwise found Rodriguez guilty of the remaining offenses.

In a subsequent proceeding, the trial court found the prior serious felony and prior strike allegations against defendant true. The court sentenced defendant to life in prison with the possibility of parole plus 17 years.

We affirmed defendant's convictions in *Arteaga, supra*, C060504 but vacated his sentence and remanded with directions to the trial court to consider whether to dismiss defendant's prior strike conviction. According to the factual summary in *Arteaga*, defendant and two other men (including codefendant Rodriguez) broke into the victim's home and demanded money from the victim's son; the son escaped from the house but defendant and his cohorts forced the victim and a woman also present at the home into a backyard shed where they took turns beating the victim in the head with a cast iron frying pan, a block of wood, and a ball peen hammer until he was unconscious, while simultaneously taking turns raping the woman.[3]

Following issuance of the remittitur in *Arteaga*, the trial court denied defendant's request to dismiss his prior serious felony conviction under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497. The court reimposed the original sentence.

In November 2021, defendant filed a resentencing petition under former section 1170.95 (now § 1172.6). At the time, the statute applied to murder convictions and did

---

[3]     We provide this brief factual summary from *Arteaga* solely for the purpose of summarizing the background of this case; our consideration of whether defendant stated a prima facie case under section 1172.6 is based on our independent review of the record of conviction. (See *People v. Delgadillo* (2022) 14 Cal.5th 216, 222, fn. 2.)

not expressly provide relief for those with attempted murder convictions. (See Stats. 2018, ch. 1015, § 4.)

Although defendant had not been convicted of murder, his petition alleged that a complaint, information, or indictment had been filed against him that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine, that at trial he was convicted of first or second degree murder pursuant to those theories, and that he could not now be convicted of first or second degree murder because of changes to sections 188 and 189 effective January 1, 2019. Defendant also checked a box alleging that he was convicted of second degree murder under the natural and probable consequences doctrine or under the second degree felony-murder doctrine and could not currently be convicted given the recent statutory changes to section 188. He requested the appointment of counsel.

In May 2022, after the Legislature amended the statute to expand resentencing eligibility to persons convicted of attempted murder based on the natural and probable consequences doctrine (Stats. 2021, ch. 551, § 2), the People filed an informal response arguing that defendant had failed to make a prima facie case for relief because the record of conviction showed the jury convicted defendant either as a direct perpetrator or direct aider and abettor to the premeditated and deliberate attempted murder as the trial court did not instruct on, and the prosecutor did not argue, the theory of natural and probable consequences. The People requested the trial court judicially notice the clerk's transcript (including the jury instructions given and the verdict forms), the reporter's transcript, and our opinion affirming defendant's convictions in *Arteaga, supra*, C060504.

In reply, defendant asked the trial court to correct defendant's petition with readily ascertainable information regarding his attempted murder conviction and argued that the petition as corrected established a sufficient prima facie showing. Citing *People v. Langi* (2022) 73 Cal.App.5th 972 (*Langi*), and based on the jury instructions given at trial, including CALCRIM Nos. 400 and 401 regarding aiding and abetting, and CALCRIM

4

Nos. 600 and 601 concerning attempted murder, defense counsel posited that it was possible the jury found defendant guilty of willful, premeditated, and deliberate attempted murder by imputing the perpetrator's specific intent to kill the victim to defendant based on defendant aiding and abetting the perpetrator during another crime such as assault, robbery, or burglary. Because the jury asked several questions concerning the aiding and abetting instructions during deliberations and also found the great bodily injury enhancement attached to the attempted murder charge not true, defendant argued the jury must have found him guilty as an aider and abettor and not the direct perpetrator. Defendant further objected to the trial court considering *Arteaga*'s factual summary in making the prima facie determination.

The People filed a supplemental brief urging the trial court to consider *Arteaga, supra*, C060504 as part of the record of conviction. They distinguished *Langi, supra*, 73 Cal.App.5th 972, which involved an implied malice murder—something not at issue in defendant's case—and also argued that the record of conviction showed defendant's jury was never instructed on, and the prosecutor did not argue, a natural and probable consequences theory of liability.

Defendant filed a supplemental reply, arguing that a bracketed portion of CALCRIM No. 400 given to the jury included natural and probable consequences language, thus making it possible the jury found him guilty of attempted murder based on the natural and probable consequences doctrine. Defendant attached excerpts of the prosecutor's closing argument to show the prosecutor did not specifically address or directly argue defendant had the intent to kill.

The trial court considered the petition at a hearing in October 2022 during which counsel reiterated their respective positions. Before the hearing, the court reviewed the parties' briefs and written submissions, including the jury instructions and jury verdicts, as well as this court's decision in *Arteaga, supra*, C060504, which it found it could consider at the prima facie stage under *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*).

5

The trial court also noted that it had presided over defendant's criminal trial and independently recollected the facts of the case.

The trial court denied the petition, finding defendant failed to establish a prima facie case for relief. The court found *Langi, supra*, 73 Cal.App.5th 972 did not apply because defendant was not convicted of implied malice murder but rather attempted murder that was willful, premeditated, and deliberate. And based on the jury instructions given, the court concluded the record of conviction conclusively showed the jury had not been instructed on the natural and probable consequences doctrine and that defendant had been convicted of attempted murder with the intent to kill regardless of whether the jury found him guilty as a direct perpetrator or as an aider and abettor. The court rejected the notions that the prosecutor's closing argument somehow created a natural and probable consequences theory or that the not true finding on the great bodily injury enhancement showed he was convicted as an aider and abettor with an imputed intent to kill. Defendant timely appealed.

## DISCUSSION

Defendant challenges the trial court's denial of his petition at the prima facie stage, arguing that nothing in the record of conviction conclusively shows he is ineligible for relief as a matter of law. To the extent the trial court relied on the factual summary in *Arteaga, supra*, C060504 or its own independent recollection of the trial to find he failed to satisfy the requisite prima facie showing, defendant contends the court erred. We are not persuaded.

### I

### *Applicable Law*

Effective January 1, 2019, Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) amended the felony-murder rule and the natural and probable consequences doctrine "to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying

6

felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) Senate Bill 1437 also added what is now section 1172.6. (Stats. 2018, ch. 1015, § 4; Stats. 2022, ch. 58, § 10.) Effective January 1, 2022, Senate Bill No. 775 (2021-2022 Reg. Sess.) (Senate Bill 775) amended section 1172.6 to expand those eligible for relief to, among others, persons convicted of attempted murder based on the natural and probable consequences doctrine. (Stats. 2021, ch. 551, § 1, subd. (a).)

As relevant here, section 1172.6, subdivision (a) now provides that a person convicted of attempted murder under the natural and probable consequences doctrine may file a petition for resentencing and be resentenced if all of the following conditions apply: (1) a complaint or information was filed against the petitioner that allowed the prosecution to proceed under a theory of attempted murder under the natural and probable consequences doctrine; (2) the petitioner was convicted of attempted murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of attempted murder; and (3) the petitioner could not presently be convicted of attempted murder because of changes to sections 188 and 189 made effective January 1, 2019.

If the petition presents a prima facie showing of entitlement to relief, the trial court must issue an order to show cause. (§ 1172.6, subd. (c).) The trial court must then hold a hearing to determine whether the petitioner is entitled to resentencing. (§ 1172.6, subd. (d)(1).)

The prima facie inquiry under section 1172.6, subdivision (c) is limited, and the bar for establishing a prima facie claim for relief is low. (*Lewis, supra*, 11 Cal.5th at p. 971.) The trial court " ' "takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved." ' " (*Ibid.*) Although the trial court may rely on the record of conviction in determining whether the petitioner has made a prima facie

showing, it "should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Id.* at p. 972.)

We independently review a trial court's determination of whether a petitioner has made a prima facie showing. (*People v. Harden* (2022) 81 Cal.App.5th 45, 52.)

## II

### *Record of Conviction*

Before considering defendant's substantive claims, we first address his procedural argument that the trial court erroneously relied on information outside the record of conviction to conclude that he and his cohorts had the specific intent to kill, which precluded him from relief as a matter of law.

Citing subdivision (d)(3) of section 1172.6, which provides that at an evidentiary hearing following issuance of an order to show cause the court "may also consider the procedural history of the case recited in any prior appellate opinion" in determining whether a petitioner is entitled to resentencing relief, defendant argues that the trial court could not consider the substantive facts or legal analysis of *Arteaga, supra*, C060504 in making its prima facie determination. (See, e.g., *People v. Flores* (2022) 76 Cal.App.5th 974, 988 [concluding that because the "factual summary in an appellate opinion is not evidence that may be considered at an evidentiary hearing to determine a petitioner's eligibility for resentencing," such evidence could not establish, as a matter of law, a petitioner's ineligibility at the prima facie stage]; but see *People v. Ervin* (2021) 72 Cal.App.5th 90, 102 ["The record of conviction may include the underlying facts as summarized in an appellate opinion"].) He also contends the trial court could not consider its " 'vivid recollection' " of the trial evidence because such independent recollections are not part of the record of conviction. (See, e.g., *Ervin*, at p. 102 [record of conviction may include admissible trial evidence, the court's instructions to the jurors, and the parties' closing arguments].)

8

We need not definitively decide whether a trial court may consider a prior appellate opinion's factual summary or independently recall the evidence adduced at a trial over which it presided in making the prima facie determination under section 1172.6. Even if we assume without deciding that the trial court was limited to the procedural history of *Arteaga, supra*, C060504 and could not rely on its independent recollection of the trial evidence, we may still affirm the trial court's order if correct on any legal theory, regardless of the reasons that prompted the trial court to reach its decision. (*Pasadena Medi-Center Associates v. Superior Court* (1973) 9 Cal.3d 773, 779-780, fn. 6 [if a trial court's decision is correct on any theory of law applicable to the case, the appellate court will affirm the judgment, whether the trial court's reasons were correct or not]; *Anderson v. Davidson* (2019) 32 Cal.App.5th 136, 144 [there is no prejudicial error from erroneous logic or reasoning if the decision itself is correct].) We thus turn to whether the trial court's determination that defendant failed to make the requisite prima facie showing was correct on any applicable legal theory.

### III

### *Prima Facie Showing*

Defendant contends that he satisfied his prima facie burden under section 1172.6 because the jury instructions given, and the verdicts rendered show it was at least possible that the jury imputed express malice (or the intent to kill) to him based solely on his participation in an assault, robbery, or burglary even if the jury was not expressly instructed on the natural and probable consequences doctrine. While he acknowledges that the plain language of section 1172.6 appears to apply only to attempted murder convictions based on the natural and probable consequences doctrine, he nevertheless argues that interpreting the statute in this limited manner leads to an absurd result. Neither argument is compelling.

*A.    Statutory Construction*

We address defendant's statutory interpretation argument first, which we review de novo. (*People v. Gregor* (2022) 82 Cal.App.5th 147, 153.) " 'Under fundamental rules of statutory construction, we must ascertain the intent of the Legislature . . . from examining the statute as a whole in order to effectuate the purpose of the law.' " (*Ibid.*) The statutory language is generally the most reliable indicator of the Legislature's intent, so we look first to the words themselves, giving them their usual and ordinary meaning and construing them in context. (*People v. Johnson* (2002) 28 Cal.4th 240, 244.) If the statute's plain language is clear and unambiguous, we apply that meaning and do not engage in further judicial construction. (*Ibid.*) However, we will not follow the plain meaning of a statute if doing so would frustrate the legislation's manifest purpose as a whole or lead to an absurd result. (*Gregor*, at p. 153.)

As previously noted, section 1172.6 partly provides: "A person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, *attempted murder under the natural and probable consequences doctrine*, or manslaughter may file a petition with the court that sentenced the petitioner to have the petitioner's murder, attempted murder, or manslaughter conviction vacated and to be resentenced on any remaining counts . . . ." (§ 1172.6, subd. (a), italics added.) A petition is facially sufficient if it alleges that "[a] complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, *or attempted murder under the natural and probable consequences doctrine*." (§ 1172.6, subd. (a)(1), italics added.)

Here, defendant acknowledges, and we agree, that the ordinary meaning of section 1172.6's statutory language provides relief to those persons convicted of attempted murder based on the natural and probable consequences doctrine. Other courts have

similarly interpreted the plain meaning of the statute.  (See, e.g., *People v. Coley* (2022) 77 Cal.App.5th 539, 548 (*Coley*) [§ 1172.6 "applies by its terms only to attempted murders based on the natural and probable consequences doctrine"].)

Despite this plain meaning, defendant argues the literal language leads to an absurd result because the statute includes additional theories of relief for those convicted of murder, i.e., the felony-murder rule, the natural and probable consequences doctrine, and any *other theory under which malice is imputed to a person based solely on that person's participation in a crime*, but does not apply those same theories to those convicted of attempted murder or manslaughter.  He urges us to disregard the plain meaning and instead interpret the statute so that a petitioner convicted of attempted murder under the natural and probable consequences doctrine *or other theory under which malice is imputed to a person based solely on that person's participation in a crime* is entitled to resentencing relief.

But our function in construing a statute " ' "is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted . . . ." ' "  (*People v. Pecci* (1999) 72 Cal.App.4th 1500, 1505.)  Because the language is unambiguous, and twice repeated in subdivision (a) and subdivision (a)(1) of section 1172.6, we conclude the Legislature meant what it said:  the statute provides resentencing relief to those convicted of attempted murder based on the natural and probable consequences doctrine and we decline defendant's invitation to insert additional language into the statute.  There is nothing absurd about limiting eligibility to those convicted of attempted murder based on a natural and probable consequences theory even if other offenses may be eligible under different theories.

B.      *Attempted Murder Based on the Natural and Probable Consequences Doctrine*

With the above statutory construction in mind, we consider whether the record of conviction conclusively shows, like the trial court found, that defendant's jury did not

11

convict defendant of attempted murder based on a natural and probable consequences theory.

"[A]ttempted murder requires the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing." (*People v. Lee* (2003) 31 Cal.4th 613, 623; see also *People v. Smith* (2005) 37 Cal.4th 733, 739.) For purposes of the offense, "[i]ntent to unlawfully kill and express malice are, in essence, 'one and the same.' " (*Smith*, at p. 739.) To be guilty of attempted murder, then, a defendant must harbor express malice toward the particular victim (*ibid.*), unless that malice is imputed to the defendant under a theory such as the natural and probable consequences doctrine.

Under the natural and probable consequences doctrine, an aider and abettor may be culpable for a nontarget, or unintended, offense committed while committing a target offense. (*People v. Favor* (2012) 54 Cal.4th 868, 874 [" ' "a person who knowingly aids and abets criminal conduct is guilty of not only the intended crime [target offense] but also of any other crime the perpetrator actually commits [nontarget offense] that is a natural and probable consequence of the intended crime" ' "].) "By its very nature, aider and abettor culpability under the natural and probable consequences doctrine is not premised upon the intention of the aider and abettor to commit the nontarget offense because the nontarget offense was not intended at all. It imposes vicarious liability for any offense committed by the direct perpetrator that is a natural and probable consequence of the target offense." (*People v. Canizalez* (2001) 197 Cal.App.4th 832, 852.) Attempted murder can be a natural and probable consequence of other target crimes such as assault or robbery. (See, e.g., *People v. Hoang* (2006) 145 Cal.App.4th 264, 271-274 [assault]; *People v. Cummins* (2005) 127 Cal.App.4th 667, 677 [robbery].)

Here, the jury instructions show the jury was not instructed on a natural and probable consequences theory. Rather, the trial court instructed the jury on direct

12

perpetrator liability or direct aider and abettor liability—each of which required a specific intent to kill.

The trial court instructed the jury with CALCRIM Nos. 400 and 401, on the theory of direct aiding and abetting an intended crime, as well as CALCRIM No. 600, which advised the jury that an attempted murder conviction required a finding that "[t]he defendant intended to kill [the victim]." The trial court also gave CALCRIM No. 601, which informed the jury that if it found defendant guilty of attempted murder, it had to decide whether the People had proved the additional allegation that the attempted murder was done willfully, and with deliberation and premeditation. That instruction told the jury that "[t]he defendant acted willfully if he intended to kill when he acted. The defendant deliberated if he carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill. The defendant premeditated if he decided to kill before acting."

Importantly, the jury *was not* instructed with CALCRIM Nos. 402 and 403, which contain the natural and probable consequences doctrine for nontarget crimes. These instructions are appropriate whenever the prosecution's theory is that any of the crimes charged were committed as a natural and probable consequence of the target crime. (*People v. Estrada* (2022) 77 Cal.App.5th 941, 947 [discussing jury instruction bench notes that delineate when particular instructions should be given].)

Based on the instructions given, the jury found defendant guilty of attempted murder and also found true the allegation that defendant committed the attempted murder willfully, with deliberation and premeditation, as those terms were defined in CALCRIM No. 601. The record of conviction thus establishes as a matter of law that defendant was not found guilty of first degree attempted murder based on the natural and probable consequences doctrine because the jury was not instructed on that doctrine. (Cf. *Coley, supra*, 77 Cal.App.5th at p. 548 [trial court not required to grant resentencing on attempted murder count where the record showed the jury was not instructed on the

13

natural and probable consequences doctrine].) Instead, the jury necessarily found defendant himself acted with an intent to kill, which renders him ineligible for relief as a matter of law under section 1172.6.

While defendant concedes the trial court did not instruct on the natural and probable consequences doctrine per se, he speculates that because the above instructions referred to "the defendant" singularly rather than to "the defendants" plurally, it would have been unclear to the jury *which* defendant had to act with the intent to kill. Thus, the jury could have found codefendant Rodriguez acted with the intent to kill and it could have simply imputed that intent to kill to defendant based on his participation in the crimes.

But defendant ignores the fact that the trial court also instructed the jury with CALCRIM No. 203 regarding multiple defendants. This instruction informed the jury that "[b]oth defendants in this case are charged with the same crimes," and that the jury "must separately consider the evidence as it applies to each defendant" and "decide each charge for each defendant separately." If the jury could not reach a verdict on both of the defendants, or on any of the charges against any defendant, it was instructed to report its disagreement to the court and return verdicts on any defendant or charge on which the jurors unanimously agreed. Unless the court informed the jury otherwise, the jury was instructed that "all instructions apply to each defendant."

We " 'must consider the instructions together as a whole, to determine whether it is reasonably likely a jury would interpret an instruction in a particular way.' " (*People v. Williams* (2022) 86 Cal.App.5th 1244, 1255-1256.) We presume the jury followed CALCRIM No. 203, as well as the court's other instructions, in evaluating the trial evidence. (*People v. Sanchez* (2001) 26 Cal.4th 834, 852.) After receiving the instructions, the jury reached a guilty verdict on the attempted murder charge against defendant *but not* codefendant Rodriguez. Thus, it is not reasonably likely that jurors

14

were confused as to "which defendant" had the necessary intent to kill for purposes of the first degree attempted murder offense.

Defendant next argues that because CALCRIM No. 400 as given included bracketed language based on the concept of the natural and probable consequences doctrine, it is possible the jury imputed the intent to kill from Rodriguez to him under that instruction. The bracketed paragraph at issue reads: "Under some specific circumstances, if the evidence establishes aiding and abetting of one crime, a person may also be found guilty of other crimes that occurred during the commission of the first crime."

A similar argument was considered and rejected in *People v. Estrada, supra*, 77 Cal.App.5th 941. There, the trial court concluded the defendant, who was convicted of first degree murder, was ineligible for resentencing "as a matter of law because the record demonstrated he was convicted as an aider and abettor." (*Id.* at p. 943.) The appellate court affirmed, finding that even though the trial court had instructed the jury with the language in CALCRIM No. 400 that defendant argues is problematic here, that language alone was insufficient to find that the jury was instructed on the natural and probable consequences doctrine where the trial court had only given CALCRIM No. 401 on direct aiding and abetting and not CALCRIM Nos. 402 and 403 on the natural and probable consequences doctrine. (*Estrada*, at pp. 946-947.) We find *Estrada* persuasive on this point. (See also *People v. Johnson* (2016) 62 Cal.4th 600, 638-641 [where jury was instructed with an old version of CALCRIM No. 400 that included " 'equally guilty' " language, there was no reasonable likelihood the jury would have understood the equally guilty language to allow them to base the defendant's liability for first degree murder from the mental state of the actual shooter, rather than on the defendant's own mental state in aiding and abetting the killing, where the jury was also instructed with CALCRIM No. 401].)

15

Defendant's reliance on *Langi, supra*, 73 Cal.App.5th 972 and *People v. Maldonado* (2023) 87 Cal.App.5th 1257, is equally unavailing. Those cases assumed that aiding and abetting an implied malice murder can involve the imputation of malice based on participation in a crime even when no instructions have been given on the natural and probable consequences doctrine. (See *Langi*, at pp. 982-983 [jury instructions on aiding and abetting an implied malice second degree murder created ambiguity that did not require finding of intent to kill or conscious disregard of risk]; *Maldonado*, at p. 1259 [jury instructions on aiding and abetting an implied malice lying-in-wait murder allowed the jury to impute malice to the defendant based solely on his participation in a crime].) But *Langi* and *Maldonado* do not apply here because those cases involve *implied* malice murder, which does not require the jury to find an intent to kill. (*Coley, supra*, 77 Cal.App.5th at p. 547; *People v. Powell* (2021) 63 Cal.App.5th 689, 711-712.)

The offense of attempted murder, by contrast, did require the jury to find defendant acted with the intent to kill. (*People v. Lee, supra*, 31 Cal.4th at p. 623; *People v. Smith, supra*, 37 Cal.4th at p. 739.) In addition, the jury was instructed that to find defendant guilty as a direct aider and abettor, it was required to find defendant knew the perpetrator intended to attempt to kill the victim, he intended to aid and abet the perpetrator in attempting to kill the victim, and he did by word or conduct aid the perpetrator in attempting to kill. And, in finding the attempted murder was willful, deliberate, and premeditated, the jury was required to find, and did find, that defendant intended to kill when he acted, carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill and did so before acting.

The fact that the jury found the attached great bodily injury enhancement not true does not compel a different result. As the People note, the section 12022.7 allegation does not contain an intent to kill element, so the jury's not true finding on the allegation does not mean it found defendant lacked an intent to kill the victim during the attempted murder offense. Similarly, that the jury asked questions during deliberations regarding

16

the aiding and abetting instructions does not establish that the jury found defendant guilty as an aider and abettor under the natural and probable consequences doctrine rather than as a direct perpetrator or direct aider and abettor. The jury's questions regarding the aiding and abetting instructions could easily have been referring to Rodriguez for whom the jury was unable to reach a verdict on the attempted murder charge.

In finding defendant guilty of first degree attempted murder (§§ 664, 187, subd. (a)), the jury necessarily determined defendant acted with the intent to kill. The jury's findings that defendant had the intent to kill as evidenced by the jury instructions and its verdict refute the allegations in the petition for resentencing and demonstrate defendant was not eligible for relief as a matter of law. (*Lewis, supra*, 11 Cal.5th at p. 971; *People v. Soto* (2020) 51 Cal.App.5th 1043, 1055.)

## DISPOSITION

The order denying defendant's section 1172.6 petition for resentencing is affirmed.

/s/
EARL, P. J.

We concur:


/s/
HULL, J.


/s/
RENNER, J.