Filed 11/21/24  P. v. Wittkop CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| THE PEOPLE, | C098905 |
| Plaintiff and Respondent, | (Super. Ct. No. 62085352B) |
| v. | |
| JUSTIN MATHEW WITTKOP, | |
| Defendant and Appellant. | |

Defendant Justin Mathew Wittkop appeals from the trial court's denial of his petition for resentencing under Penal Code section 1172.6.  (Undesignated statutory references are to the Penal Code.)  A jury originally found defendant guilty of attempted murder and assault with a firearm, among other offenses, related to a drive-by shooting.  The jury was instructed on the natural and probable consequences doctrine.  The jury found true that:  (1) the attempted murder was willful, deliberate, and premeditated; and (2) defendant personally and intentionally used and discharged a firearm proximately causing great bodily injury as to the attempted murder (§ 12022.53, subds. (b)-(d)).  The trial court concluded defendant failed to

1

make a prima facie case because the jury's verdicts and true findings on the firearm allegations established defendant was the actual shooter who acted with malice.

On the limited record before us, we cannot conclude the jury necessarily found defendant acted with express malice as to the attempted murder count. Given the low threshold at the prima facie stage, the charges, the instructions given, and the jury's verdicts, it is conceivable that the jury found defendant intended to participate in an assault with the intent to injure, not kill, but was nonetheless liable under the natural and probable consequences doctrine for attempted murder because his codefendant, who was also in the car when the shots were fired, acted with intent to kill. We therefore reverse the trial court's order and remand for further proceedings under section 1172.6.

## BACKGROUND

*The Shooting and the Charge*

The information charged defendant and codefendant Kelsey Brace with the attempted willful, deliberate, and premeditated murder of A.K. (count one), two counts of assault with a firearm (count two A.K. & count three K.J.), shooting from a motor vehicle (count four), and shooting at an inhabited dwelling (count five).[1] The information alleged that defendant personally inflicted great bodily injury on A.K. and that he did so by discharging a firearm from a motor vehicle (§§ 12022.7, subd. (a), 12022.55; counts one, two, & four), that he personally used a firearm (§§ 1203.06, subd. (a)(1), 12022.5, subd. (a)(1); counts two through five), and that he personally used and intentionally discharged a firearm proximately causing great bodily injury (§ 12022.53, subds. (b)-(d); counts one, four & five).

---

[1] The information also initially charged defendant and Brace with conspiracy to commit assault by means of force likely to produce great bodily injury and assault with a firearm (§ 182, subd. (a)(1); count six), but based on the limited record before us, it appears count six was subsequently dismissed at an unknown time. The court did not instruct the jury on count six and the jury did not render a verdict on that count.

We summarize the pertinent facts from our prior opinion in *People v. Wittkop* (Sept. 23, 2011, C064795) (nonpub. opn.) (*Wittkop*) affirming defendant's judgment. We do not rely on this factual summary in reaching our decision but paraphrase it to give context to our discussion.

In November 2008, codefendant Brace got into an argument and physical altercation with a group of teenage high school students in the parking lot of a fast food restaurant after school. Brace called defendant, who was her boyfriend, to tell him about the altercation and he picked her up in his car. As defendant drove past the teens while they walked down the street, three shots were fired from defendant's car, striking A.K. twice and hitting a nearby apartment. Brace pled to two counts of assault and testified against defendant that defendant was the shooter; defendant testified that Brace had fired the gun.

*The Jury Instructions and Jury Verdicts*

The trial court instructed the jury on general aiding and abetting principles (CALCRIM No. 400) as well as direct aiding and abetting of target offenses (CALCRIM No. 401) and indirect aiding and abetting of nontarget offenses under the natural and probable consequences doctrine (CALCRIM No. 402). The court also instructed the jury on attempted murder (CALCRIM No. 600) and premeditation and deliberation (CALCRIM No. 601) as well as assault with a firearm (CALCRIM No. 875) and shooting from a motor vehicle (CALCRIM No. 968). As it relates to the attempted murder charge, the court instructed the jury with personally using a firearm (CALCRIM No. 3146), personally and intentionally discharging a firearm (CALCRIM No. 3148), and personally and intentionally discharging a firearm causing great bodily injury (CALCRIM No. 3149). In the event the jury found defendant guilty of attempted murder, the court gave a special instruction regarding discharging a firearm from a motor vehicle under section 12022.55, and instructed the jury on personally inflicting great bodily injury under section 12022.7 (CALCRIM No. 3160).

CALCRIM No. 400 as given stated: "A person may be guilty of a crime in two ways. One, he or she may have directly committed the crime. I will call that person the perpetrator.

3

Two, he or she may have aided and abetted a perpetrator, who directly committed the crime. A person is equally guilty of the crime whether he or she committed it personally or aided and abetted the perpetrator who committed it. [¶] Under some specific circumstances, if the evidence establishes aiding and abetting of one crime, a person may also be found guilty of other crimes that occurred during the commission of the first crime."

For intended crimes, CALCRIM No. 401 informed the jury that to prove a person guilty of a crime "based on aiding and abetting that crime," the People had to prove (1) the perpetrator committed the crime; (2) the defendant knew that the perpetrator intended to commit the crime; (3) before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime; and (4) the defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime. The jury was further instructed, in part, that "[s]omeone *aids and abets* a crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime."

For unintended crimes, the trial court gave CALCRIM No. 402, which instructed the jury that "[u]nder certain circumstances, a person who is guilty of one crime by aiding and abetting may also be guilty of other crimes that were committed at the same time." The instruction, as given, stated: "The defendant is charged in Count TWO with Assault with a Firearm upon A.K. and in Count ONE with the Attempted Murder of A.K. [¶] You must first decide whether the defendant is guilty of Assault with a Firearm by aiding and abetting. If you find the defendant is guilty of this crime, you must then decide whether he is guilty of Attempted Murder. [¶] To prove that the defendant is guilty of Attempted Murder as an [aider] and abettor, the People must prove that: [¶] 1. The defendant is guilty of Assault with a Firearm as an aider and abettor; [¶] 2. During the commission of Assault with [a] Firearm, a coparticipant in that crime committed the crime of Attempted Murder; [¶] AND [¶] 3. Under all of the circumstances, a reasonable person in the defendant's position would have known that the commission of Attempted Murder was a natural and probable consequence of the

4

commission of the Assault with a Firearm. [¶] . . . [¶] A natural and probable consequence is one that a reasonable person would know is likely to happen if nothing unusual intervenes. In deciding whether a consequence is natural and probable, consider all of the circumstances established by the evidence. If the Attempted Murder was committed for a reason independent of the common plan to commit the Assault with a Firearm, then the commission of Attempted Murder was not a natural and probable consequence of Assault with a Firearm. [¶] . . . [¶] The People allege that the defendant originally intended to aid and abet the commission of Assault with a Firearm. The defendant is guilty of Attempted Murder if the People have proved that the defendant aided and abetted Assault with a Firearm and that Attempted Murder was the natural and probable consequence of Assault with a Firearm."

For attempted murder, the trial court instructed the jury with CALCRIM No. 600, which provided in relevant part: "To prove that the defendant is guilty of attempted murder, the People must prove that: [¶] 1. The defendant took at least one direct but ineffective step toward killing another person; [¶] AND [¶] 2. The defendant intended to kill that person." "A direct step," the court explained, "indicates a definite and unambiguous intent to kill."

The trial court also instructed the jury with CALCRIM No. 601 as follows: "If you find the defendant guilty of attempted murder under Count One, you must then decide whether the People have proved the additional allegation that the attempted murder was done willfully, with deliberation and premeditation. [¶] The defendant acted *willfully* if he intended to kill when he acted. The defendant *deliberated* if he carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill. The defendant *premeditated* if he decided to kill before acting."

Regarding the firearm enhancements under sections 12022.5 and 12022.53, the relevant instructions informed the jury that either defendant had to personally use a firearm, which meant he displayed it in a menacing manner, hit someone with the weapon, or fired it (CALCRIM No. 3146), or that he personally discharged the firearm and intended to discharge the firearm (CALCRIM Nos. 3148 & 3149). The section 12022.55 firearm enhancement

5

instruction required the jury to find that defendant discharged a firearm from a motor vehicle in the commission of a felony or attempted felony, which resulted in the infliction of great bodily injury or death of a person other than an occupant of a motor vehicle, and that "[t]he defendant had the intent to inflict great bodily injury or death."

The jury found defendant guilty of the charged offenses and found the attached enhancements true.[2] The trial court sentenced defendant to a determinate term of seven years in prison plus 25 years to life with the possibility of parole, which we affirmed on appeal in *Wittkop*, *supra*, C064795.

*The Petition for Resentencing*

In March 2023, defendant filed a section 1172.6 petition for resentencing on his attempted murder conviction. He declared that he had been charged with attempted murder, among other offenses, and with various firearm enhancements; the jury convicted him of all charges; the indictment allowed the prosecution to proceed on a natural and probable consequences theory of attempted murder; the jury was instructed on imputed intent based on the natural and probable consequences theory and the prosecution argued the natural and probable consequences doctrine in closing; and he could not presently be convicted of attempted murder under the current law. The court found defendant's petition facially sufficient and set the matter for a prima facie hearing.

Prior to the hearing, the People opposed the petition. They argued defendant was ineligible for relief as a matter of law because the record of conviction, including the jury's verdicts, showed that it found him guilty of attempted murder that was willful, deliberate, and premeditated while personally and intentionally discharging a firearm causing injury. Thus, defendant was convicted of attempted first degree murder as the actual shooter, rendering him

<hr />

[2] Although the information alleged the section 12022.55 enhancement for discharging a firearm from a motor vehicle with the intent to inflict great bodily injury on A.K. for count one, the attempted murder charge, the jury did not make a finding as to that enhancement for that count. It did find the section 12022.55 enhancement true for count two.

ineligible for relief as a matter of law. They attached the abstracts of judgment and this court's prior opinion in *Wittkop*.

In reply, defendant asserted the trial court could not rely on *Wittkop*'s factual summary in making the prima facie determination because doing so required it to engage in impermissible factfinding. He also argued that the jury could have convicted him of attempted murder based on the natural and probable consequences doctrine because he claimed he was not the shooter and the jury was instructed with CALCRIM No. 402, which stated that " '[a] natural and probable consequence is one that a reasonable person would know is likely to happen if nothing unusual intervenes.' " According to defendant, the jury's firearm enhancement findings did not preclude relief as a matter of law.

At the June 2023 prima facie hearing, defense counsel argued that because there was conflicting testimony at trial regarding the shooter's identity and the jury was instructed with CALCRIM No. 402 on natural and probable consequences, he had met his prima facie burden. According to counsel, the jury may have believed that both defendant and Brace were guilty of being the shooter and thus the jury's firearm enhancement findings did not preclude relief as a matter of law.

Although the prosecutor still maintained the trial court could consider *Wittkop*'s factual summary at the prima facie stage, he argued that even without relying on the summary, the trial court should deny relief based on the jury's true finding on the section 12022.53, subdivision (d) firearm enhancement, which showed that it found defendant was the actual shooter in the attempted murder. Despite the natural and probable consequences instruction, the jury's verdicts and enhancement findings showed that the jury found beyond a reasonable doubt that defendant actually shot the victim.

The trial court denied the petition, finding defendant failed to make a sufficient prima facie showing based "simply on the court record." According to the court, the court record reflected that defendant was found guilty of premeditated and deliberate attempted murder, and that the jurors, who were instructed with CALCRIM No. 3149 (the pattern jury instruction on

7

section 12022.53, subdivision (d)), found true that defendant personally discharged a firearm causing great bodily injury during the attempted murder. Given the jury's true finding on the section 12022.53, subdivision (d) firearm enhancement, coupled with its finding that the attempted murder was willful, deliberate, and premeditated, the jury necessarily found that he was the actual shooter.

Defendant timely appealed.

## DISCUSSION

## I

### *Applicable Law*

Effective January 1, 2019, Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) amended "the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f); see *People v. Lewis* (2021) 11 Cal.5th 952, 959.) Senate Bill 1437 also created a procedural mechanism in section 1172.6 for those convicted under the former law to seek retroactive relief under the law as amended. (Stats. 2018, ch. 1015; *Lewis*, at p. 957.) Senate Bill No. 775 (2021-2022 Reg. Sess.) later expanded the statute to apply to attempted murder under the natural and probable consequence doctrine and manslaughter. (Stats. 2021, ch. 551, § 2.)

In its current form, section 1172.6, subdivision (a), applies to those convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime or a person convicted of attempted murder based on the natural and probable consequences doctrine. To be eligible for relief, the petitioner must make a prima facie showing that he could not presently be convicted of murder or attempted murder under changes to these theories of murder liability made effective on January 1, 2019, by Senate Bill 1437. (§ 1172.6, subd.

8

(a)(3).) If the petitioner makes a prima facie showing, the trial court must issue an order to show cause and conduct an evidentiary hearing where the prosecution bears the burden of proving beyond a reasonable doubt that the defendant could still be convicted of murder under current law. (§ 1172.6, subds. (c), (d).)

At the prima facie stage, the court may deny a resentencing petition only if the petitioner is ineligible for relief as a matter of law. That is, the petition and the record of conviction must "establish conclusively that the defendant is ineligible for relief." (*People v. Strong* (2022) 13 Cal.5th 698, 708.) This is a pure question of law we review de novo. (*People v. Lopez* (2022) 78 Cal.App.5th 1, 14.)

While the trial court may look to the record of conviction after appointing defense counsel, the prima facie inquiry is limited. (*People v. Lewis*, *supra*, 11 Cal.5th at p. 971.) The court takes the petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if those factual allegations were proved. (*Ibid.*) If so, the court must issue an order to show cause. (*Ibid.*) At that early stage, the trial court should not reject the petitioner's factual allegations on credibility grounds or engage in factfinding that involves the weighing of evidence or the exercise of discretion. (*Id.* at p. 972.) But if the record " ' "contain[s] facts refuting the allegations in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Id.* at p. 971.)

## II

### *Analysis*

Defendant contends the trial court erred by denying his petition at the prima facie stage because nothing in the record of conviction, including the jury's verdicts and enhancement findings, conclusively establish that he is ineligible for relief as a matter of law. We agree.

"Attempted murder requires the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing." (*People v. Lee* (2003) 31 Cal.4th 613, 623; see *People v. Smith* (2005) 37 Cal.4th 733, 739.) For purposes of the offense,

9

"[i]ntent to unlawfully kill and express malice are, in essence, 'one and the same.' " (*Smith*, at p. 739.) To be guilty of attempted murder, a defendant must harbor express malice toward the particular victim (*ibid.*), *unless* that malice is imputed to the defendant under some other theory such as the natural and probable consequences doctrine. Here, the information generically charged both defendant and codefendant Brace with attempted premeditated murder, which did not limit the prosecutor from convicting defendant on any available theory of attempted murder, including liability under the natural and probable consequences doctrine. (See, e.g., *People v. Eynon* (2021) 68 Cal.App.5th 967, 977-978.)

Under that doctrine, an aider and abettor may be culpable for a nontarget, or unintended, offense committed while committing a target offense. (*People v. Favor* (2012) 54 Cal.4th 868, 874.) The natural and probable consequences doctrine thus "imposes vicarious liability for any offense committed by the direct perpetrator that is a natural and probable consequence of the target offense." (*People v. Canizalez* (2011) 197 Cal.App.4th 832, 852.) Attempted murder can be a natural and probable consequence of a charged assault. (See, e.g., *People v. Hoang* (2006) 145 Cal.App.4th 264, 271-274.)

In this case, it is undisputed that the jury was instructed on the natural and probable consequences doctrine for the attempted murder charge. Particularly relevant here, CALCRIM No. 402, as given, expressly stated: "*The People allege that the defendant originally intended to aid and abet the commission of Assault with a Firearm. The defendant is guilty of Attempted Murder if the People have proved that the defendant aided and abetted Assault with a Firearm and that Attempted Murder was the natural and probable consequence of Assault with a Firearm.*" (Italics added.) Thus, the People's theory of the case was that defendant originally intended to aid and abet an assault with a firearm, and that the attempted murder was merely a natural and foreseeable consequences of the assault offense.

In light of the modified version of CALCRIM No. 402 the trial court gave here, we conclude it is at least possible that the jury may not have found that defendant personally harbored express malice, or that he had the required intent to kill, but rather that codefendant

10

Brace, who was in the car when the shots were fired, harbored express malice, which was imputed to him under the natural and probable consequences doctrine. Indeed, the fact that attempted murder requires an intent to kill, and that the jury found defendant guilty of the offense (without specifying the theory upon which it found liability), does not answer whether defendant personally intended to kill the victim, or whether that intent was transferred to him under the natural and probable consequences doctrine as instructed. (*People v. Montes* (2021) 71 Cal.App.5th 1001, 1007-1008 [trial court erred in inferring from the jury's finding of guilt of attempted murder that the jury must have found the defendant personally possessed the intent to kill where the conviction under a natural and probable consequences theory was possible].)

In denying the petition at the prima facie stage, the trial court found that the jury's true finding on the attached section 12022.53, subdivision (d) firearm enhancement conclusively showed it found he was the actual shooter. But nothing in the jury instructions for the enhancement required the jury to find that defendant himself intended to kill A.K. even if it found he discharged the gun. (See, e.g., *People v. Offley* (2020) 48 Cal.App.5th 588, 598-599 [an enhancement under § 12022.53, subd. (d) does not conclusively preclude relief under § 1172.6].)

As previously noted, CALCRIM No. 3149, as given, instructed the jury that if it found defendant guilty of attempted murder, then it had to decide whether defendant personally and intentionally discharged a firearm during that crime causing great bodily injury. To prove this firearm enhancement, the People had to prove: (1) defendant personally discharged a firearm; (2) he *intended to discharge a firearm*; and (3) defendant's act caused great bodily injury to a nonaccomplice. Thus, the intent required for the enhancement—intent to discharge—is not the same as an express intent to kill, which is now required for an attempted murder conviction. (§ 188, subd. (a)(3) [malice may not be imputed to a person based solely on that person's participation in a crime].)

And nothing in the jury's remaining true findings on the other attached firearm enhancements (§ 12022.53, subds. (b)-(c)) require an intent to kill. Thus, none of the firearm enhancements foreclose the possibility that the jury found defendant guilty of attempted murder based on the now-invalid natural and probable consequences doctrine.

Nor does the jury's true finding that the attempted murder was premeditated and deliberate establish defendant's ineligibility as a matter of law. This is because the jury made the finding only *after it had already found* defendant guilty of attempted murder. Using CALCRIM No. 601, the trial court instructed the jury that *only after* it found defendant guilty of attempted murder in count one did it then need to decide whether the People had proved the additional allegation that the attempted murder was done willfully, and with deliberation and premeditation. Again, the jury could have found, like the People argued, that defendant was guilty of attempted murder based on the natural and probable consequences doctrine by imputing Brace's intent to kill.

This is not a case, moreover, in which the only possible scenario is that defendant was the sole perpetrator. (Cf. *People v. Delgadillo* (2022) 14 Cal.5th 216, 233 [the defendant was "not entitled to any relief under section 1172.6" because he "was the actual killer and the only participant in the killing"].) Here, defendant and Brace were both in the car when the shots were fired, and both claimed the other was the shooter.

Defendant has offered a theory under which the jury's verdicts, in light of the instructions given, is consistent with his guilt of attempted murder under a natural and probable consequences theory of liability, based upon an intent to participate in the charged target offense of assault with a firearm. In doing so, he created a factual dispute that cannot be resolved at the prima facie stage since nothing in the record definitively forecloses his theory.[3] (*People v. Lewis*, *supra*, 11 Cal.5th at pp. 971-972.)

---

[3] Given our conclusion, we need not address defendant's remaining appellate contentions that the prosecutor improperly shifted the burden at the prima facie stage, that the trial court

Accordingly, remand for further proceedings is appropriate.  We express no opinion on the merits of the petition.

## **DISPOSITION**

The order denying defendant's petition for resentencing at the prima facie stage is reversed and the matter is remanded for further proceedings under section 1172.6.

 /s/                                          
Mesiwala, J.

We concur:

 /s/                           
Robie, Acting P. J.

 /s/                           
Wiseman, J.*

improperly relied on the factual summary in our prior opinion, and that none of the pre-petition documents included in the record on appeal conclusively establish his ineligibility for relief.

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.